UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

Lucas Wood

v.                                              21-CV-2254

Jonathan Ek et al,

## PROOF OF SERVICE

I, Lucas Wood, swear under penalty of perjury, that on October 16, 2024, I placed:

1. Declaration in opposition to defendants motion for summary judgement

2. Plaintiff's response to defendant Chicone's motion for summary judgement.

in the mailbox to go to the law library to be E-filed.

Respectfully submitted,

10-16-24

Lucas Wood R64297
251 N. IL. Hwy 37
Ina, IL. 62846

DECLARATION IN OPPOSITION TO
DEFENDANTS MOTION FOR SUMMARY JUDGEMENT

I, Lucas Wood, swear under under penalty of perjury pursuant to 28 U.S.C. §1746, that:

1. I am the plaintiff in this case. I make this declaration in opposition to defendant Chicone's motion for summary judgement on my claims of deliberate indifference.

2. The defendant is not entitled to summary judgement because there are genuine issues of material facts to be resolved. These issues are identified in the accompanying response to defendants motion for summary judgement and set out in this declaration.

3. Plaintiff disputes defendants argument that Chicone is not liable because she never spoke to plaintiff.

4. Defendant Chicone was made aware of plaintiffs delay in medical care and pain and suffering long before plaintiff was ever seen by Dr. Ek.

5. Plaintiff wrote request slips for nurse sick call (NSC) trying to be seen for his serious medical needs on July 15,2021, July 23,2021, August 2,2021 and August 3,2021. (See P. 19 para 101 of plaintiffs Amended sworn complaint).

6. Defendant recieved phone calls from Elizabeth Lampson regarding a delay in medical treatment, plaintiff having difficulty walking and his pain and suffering on July 21,2021 and August 3,2021 (See Ex. 9).

7. Having knowledge of plaintiffs immediate medical care needs, Chicone did not ensure "time constraints" and scheduling issues would not interfere with set appointments for plaintiff to be seen by medical staff.

8. Defendant Chicone is the Healthcare Unit Administrator and it is her responsibility to oversee the healthcare unit and its medical staff, which she failed to do (See Ex. 5).

9. Defendant Chicone admitedly failed to properly staff the Healthcare** Units (See Ex. 6).She also failed to organize and coordinate patient care assignments,monitor staff functions, and ensure they comply with medical, professional Nurse Practice

Acts, departmental directives and facility policies and procedures, which her job requires her to do. Her failure to do so violated plaintiffs Eigth Amendment Rights (See Ex 5).

10. Defendant Chicone claims plaintiff is only suing her for failing to properly staff the HealthCare Unit (HCU). This is simply not true.

11. Plaintiff is suing Chicone for deliberatley ignoring plaintiffs pleas for help, while having knowledge of his pain and suffering, deliberately disregarding her duty to ensure plaintiff was seen by a health care professional in a reasonable amount of time, short staffing, and failing to do anything more than review the offender progress notes when replying to grievances regarding Dr. Ek's indifference to plaint6iffs medical needs.

12. While plaintiff was in the infirmacy, plaintiff was constantly ignored when he explained that his pain management was ineffective. (See Ex. 11,12*,13,14,15).

13. Defendant Chicone can NOT rely on the professional judgement standard due to the fact plaintiff had not been seen by a medical professional.

14. Plaintiff has provided ample evidence showing that the care he received was not up to par according to the accepted professional judgement, practice standard (See Ex. 16,17,8).

15. The care plaintiff received was not within Wexfords guide lines for a torn achilles injury.

16. Evidence shows that defendant Chicone was put on notice that plaintiff's medical care was amiss. (See Ex1,2,3)

17. Evidence shows Chicone's job responsibilities require her to do morte than just reply to inmate grievances (See Ex. 5).

17. Plaintiff began seeking medical attention via NSC request slips on July 15,2021, was not seen by a professional untill August 5,2021, and was not given crutches or wheelchair until September 3,2021. Plaintiff was made to walk, un-aided on a completely torn achilles tendon for nearly two months.

I, Lucas Wood, swear that the above stated declaration is true to the best of my knowledge.

October 16,2024

/s/ Lucas Wood
Lucas Wood

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

Lucas Wood

V.  Case No. 21-CV-2254

Jonathan Ek et al,

PLAINTIFF'S RESPONSE TO DEFENDANT
CHICONE'S MOTION FOR SUMMARY JUDGEMENT

NOW COMES plaitiff Lucas Wood, pro se, and pursuant to Fed.R.Civ.P. 56 and local rule 7.1(D)(1), moves this HONORABLE court to DENY defendants motion for summary judgement. In support of plaintiff says:

INTRODUCTION

Plaintiff is an inmate in the custody of the Illinois Department Of Corrections and brought this lawsuit under 42 U.S.C. §1983 claiming deliberate indifference to his medical needs due to a delay in medical attention, under staffing of the healthcare unit (HCU) and unconstitutional medical treatment.

DEFENDANT'S ALLEGED UNDISPUTED
MATERIAL FACTS

1. On July 11,2021, plaintiff was injured when we was kicked in the back of the leg while playing soccer.

Plaintiff concedes.

2. Four days later, on July 15,2021, plaintiff submitted a slip for Nurse Sick Call (NSC) but was not seen.

Plaintiff concedes.

3. On July 21,2021, plaintiff walked to the healthcare unit and saw nurse Alicia Pearson for a TB shot and complained about his foot and was told to sign up for nurse sick call.

1.

Plaintiff concedes.

4. On July 23,2021, Plaintiff saw nurse Alicia Pearson.

plaintiff concedes

5. On August 5,2021, plaintiff was seen by a nurse on sick call and then Dr, Ek. Dr. Ek examined plaintiff and diagnosed him with a small tear in his achilles tendon. Dr Ek reffered plaintiff for physical therapy and an ultrasound.

plaintiff concedes

6. On August 31,2021, plaintiff had the ultrasound which showed he had a tear in his achilles tendon.

Plaintiff concedes.

7. On September 3,2021 plaintiff was admitted to the infirmary. Plaintiff was given a splint and a wheelchair. While in the infirmary, plaintiff had 24/7 access to the nursing staff. Plaintiff got regular visits from Dr. Ek on a weekly basis.

plaintiff concedes

8. On October 7,2021, plaintiff got an MRI of his leg. Thereafter he saw an Orthopedist on October 15,2021 who recommended a surgical repair. In January of 2022 plaintiff got the surgical repair.

plaiontiff concedes

9. After the surgery, plaintiff came back and remained in the infirmary for recovery. Dr. Ek prescribed Norco for pain when he came back. Dr. Ek prescribed Norco for pain when he came back to the infirmary after his surgery. In March of 20222 plaintiff went back to the Orthopedic and at that point was released and discherged from the infirmary. Plaintiff asked to go back to general population as he felt that "he was good enough to go back."    Plaintiff Concedes

10. The Orthopedic recommended physical therapy and plaintiff went out for physical therapy and was given home exercises which he still does.

plaintiff concedes

11. Plaintiff never spoke to Jennifer Chicone regarding the injury that he suffered. All of the grievances filed by plaintiff relating to his injury were handled through documentation.

Response: IMMATERIAL. Though plaintiff never spoke to defendant Chicone, she participated directly in the proven constitutional violations. Defendant Chicone, after being informed of the violations through phone calls, request slips and grievances (See Ex. 1,2,3,9) failed to remedy the wrongs. Chicone created a custom or policy under which unconstitutional practices occured or allowed the continuance of such a policy or custom. Chicone was deliberately indifferent to plaintiff by failing to act on information indicating that unconstitutional acts were occuring such as delay in being seen by medical staff, short staffing the HCU and unconstitutional medical care.(See Ex. 1,2,3,9)

12. Jennifer Chicone responded to the four grievances plaintiff filed regarding the injury that he suffered.

plaintiff concedes

13. Jennifer Chicone is an administrator. She does not actually see any inmate to provide healthcare. She oversees the people that do provide healthcare.

RESPONSE: IMMATERIAL. Defendant Chicone's job description includes, but is not limited too; Ensuring staffing levels are adequate for daily opperational needs and patient care, organize and coordinate patient care assignments, monitor staff functions

3.

to ensure that patient care and services comply with medical, professional, Nurse Practice Acts, departmental directives and facility policies and procedures, provide guidance and training to assigned staff, counsel staff regarding work performance, adjusts first level grievances, determin and recommend staffing needs, as well as many other responsibilities (See Ex. 5). Though defendant Chicone never spoke to plaintiff, Chicone had a duty to provide adequate staffing levels and ensure plaintiff has access to healthcare, which she failed to do (See Ex. 6). Chicone was made fully aware that plaintiff was in pain and had still not been seen (See Ex. 9). Plaintiff began writing requests to the HCU on July 15,2021 and was not seen until August 5,2021. Medical records prove that plaintiff's HCU passes were cancelled two times due to "time constraints" (See Ex. 4). When asked by Springfields Administrative Review Board about the cancelations, Chicone admitted it was because of being short staffed (See Ex 6). Even after seeing Defendant Ek, and Ek acknowledged plaintiff had a torn achilled tendon, plaintiff was not given crutches, splint, ice, or a low gallery permit. Plaintiff was made to continue walking and climbing stairs until September 3,2021, nearly two months after the incident occured.

 Chicone's failure to properly staff the HCU, organize and coordinate patient care assignments, counsel staff regarding work performance and failure to look further into plaintiffs grievances caused plaintiff a delay in being treated for his serious medical needs, and treatment that was unconstitutional.

 14. Jennifer Chicone did not meet plaintiff or provide any treatment to plaintiff.

RESPONSE: IMMATERIAL.  It was not defendant Chicone's job to treat plaintiff, it was her job to ensure plaintiff received adequate medical care in a reasonable amount of timne, which she failed to do.

15. Plaintiff sued Jennifer Chicone because her number one job responsibility was to ensure staffing levels are adequate for daily operation and patient care.

RESPONSE: DISPUTED.  Plaintiff is suing defendant Chicone for deliberately turning a blind eye to plaintiffs serious medical needs under color of law. Chicone's failure to ensure plaintiff was seen in a timely manner caused a delay in plaintiff receiving medical treatment. Once seen, Chicone did nothing to ensure plaintiff received carethat met standards or care that was approved by WEXFRORD. Short staffing is only part of the reason plaintiff is suing Chicone.

16. During the time that plaintiff suffered his Achilles injury COVID protocol was in place at Danville Correctional Center.

RESPONSE: IMMATERIAL.  "COVID protocol" according to defendant Chicone simply ment they "do not mix houses in the unit."(See Ex. 6).

Whether covid protocols were in place or not, plaintiff still had a constitutional right to healthcare for his serious medical needs. The Eigth Amendment prohibits the "unnecessary and wanton infliction of pain"(Estelle V. Gamble, 429 U.S. at 104).

In order to provide adequate healthcare, prison officials must have an adequate system for identifying prisoners with medical needs and making sure they are diagnosed and treated. Danville

5.

Correctional Center's system was simply to start in "1 house" every day, then go to "2 house", then "3 house", and then "4 house". The problem was that every day, they would run out of time before they got to "3 house" where plaintiff lived, due to short staffing.(See ex. 6). "Sheer disorganization and dysfunction in a medical program can amount to deliberate indifference if it prevents prisoners from receiving necessary care"(French V. Owens, 777 F.2d 1250, 1254(7th Cir.1985))(Tillery V. Owens, 719 F. Supp.1256, 1305-06 (W.D.Pa1989)(Lack of proper administration of medical services and"general disorganization" of nursing services contributed to an Eigth Amendment violation).

In this case, we are not talking about a few days delay or even a few weeks. Plaintiff was forced to wait three weeks to see a doctor, and nearly two months to be placed in the infirmary and be given a splint and wheelchair.

## ARGUMENT

I. Defendant argues in her argument "a fair reading of plaintiff's complaint is that he is not claiming that his injury was ignored entirely, but rather that he received constitutionally deficient treatment for that injury." This is false. Plaintiff argues that the delay in being treated caused further injury and unnecessary and wanton infliction of pain. An inmate is not required to show that he was literally ignored by prison staff to demonstrate deliberate indifference (Sherrod V. Lingle,223 F.3d 605,611(7th Cir.2000)). If a risk from a particular course of medical treatment (or lack thereof) is obvious enough, a factfinder can infer that a prison official knew about it and disregarded it. (Norfleet V. Webster,439 F.3d 392,396 (7th Cir.2006)). In this case, plaintiff can prove

6.

Chicone knew of plaintiffs pain and suffering, yet did not ensure plaintiff was seen in a reasonable amount of time.(See Ex.1,2,3,4,9).

A delay in treatment serves no penological interest. (Grieveson V. Anderson,538 F.3d 763,779(7Th Cir.2008))(Guards could be liable for delaying treatment of broken nosae for day and half).

Defendant also argues "plaintiff's own deposition testimony, however, establishes that the medical care he received for his leg injury was reasonable and not a substantial departure from accepted professional judgement, practice, or standards." This is far from true. Defendant Ek knew plaintiff had a torn Achilles tendon (See Ex 8,13). Mayo clinic and Cleveland clinic both identify the standards of care for a torn achilles tendon as; resting the tendon/staying off of it/use crutches, apply ice,, wrap/immobilize the ankle (See Ex. 16,17). Dr. Ek did not do or recommend any of these treatments. In fact, Dr. Ek sent plaintiff back to the general prison population, on the 2nd floor, with no splint, crutches, ace wrap, ice or low gallery permit. Defendant Ek's deliberate indifference on August 5,2021 caused plaintiff to continue walking un-aided, causing extreme pain and suffering until September 3,2021, while knowing plaintiff had a torn achilles tendon. This caused plaintiff further pain,suffering and injury.

Defendant argues "while in the infirmary, plaintiff had 24/7 access to the nursing staff". Though this sounds good on paper, the truth of the matter is that plaintiff has ample evidence that he had many conversations with nurses in the infirmary and with Dr. Ek. Plaintiff explained to them that he was still in pain and his current pain management was ineffective (See Ex.11,12,13,14,15). Plaintiff was always ignored and treated as a nusance. Failure

7.

to provide adequate pain management is a clear violation of the Eigth Amendment.

Defendant also argues that "when assesing claims of deliberate indifference against a medical professional, the 'professional judgement standard' applies. Colligon V. Milwaukee Cnty.,163 F.3d 982,989(7th Cir.1998); Johnson V. Doughty,433 F.3d 1001,1013(7th Cir.2006). Under this standard, a medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have so responded under the circumstances. Roe V. Elyea,631 F.3d 843,857 (7Th Cir.2011)". "A medical professional may only be held to have displayed deliberate indifference if 'the decision by the professional is such a substantial departure from accepted professional judgement, practice,or standards, as to demonstrate that the person responsible did not base the decision on such a judgement'" Id. at 895; see also Norfleet,439 F.3d at 396. Plaintiff argues that in this case, no minimally competent professional would have sent a patient with a torn achilles tendon into a general prison population without crutches,splint,ice(See Ex. 16,17). In fact, Defendant Ek denied plaintiff's request for crutches and lay-in (See ex. 18 para. 8,9). twenty-five days after the injury occured, Dr. Ek documented plaintiff's pain at 8/10, swelling and discoloration (See Ex.4).

Defendant states "plaintiff has no evidence to support the claim that the medical care he received for his leg injury was in any way a substantial departure from accepted professional judgement, standards, or practice". Plaintiff has provided ample evidence that professional **standards were not met.**(See Ex.16,17,**XX**,8,).

In Navarro V. Wexford Health Sources Inc.,case No. 18-CV-00143-

8.

JPG(S.D.Ill.Sep.30,2020) "Plaintiff's expert maintains that surgical repair of the injury (torn achilles tendon) should occur within 7-10 days (Nord.Dep.37:23-38:10). Therefore, when a patient presents with a torn achilles tendon, the standard procedure is to order an urgent imaging study within 24 hours of the injury.(Nord.Dep. 42:1-44:12). In Navarro V. Wexford Health Sources Inc., plaintiffs also states "while awaiting proper diagnosis and treatment, plaintiff was denied crutches and a splint. Wexford's guide lines called for both untill untill surgery was completed." Defendant Ek in no way followed professional standards of care or wexford guide lines.. Defendant Chicone argues "the record reflects that plaintiff saw an orthopedic surgeon within three months and then had surgery within six months of his injury". This is drastically different from the 7-10 days that Navarro's expert recommends.

II. Defendant claims she had no personal involvment in treating plaintiff. Plaintiff can prove Chicone helped cause and participated in the constitutional violations in this just case.

It was Chicone's job to ensure the HCU was properly staffed (See Ex. 5), yet she admitted that being short staffed made it "difficult to see all the patients who have signed up for NSC".(See Ex. 6). Chicone actively participated in plaintiffs constitutional deprivationsby having knowledge of plaintiffs pain and suffering (See Ex.1,2,3,9). Chicone's inaction in ensuring plaintiff was seen in a timely manner caused a delay in being seen, and caused unnecessary and wanton infliction of pain. Chicone was personally repponsible for staffing and overseeing the HCU (See Ex.5).

Defendant states "plaintiff's own testimony establishes that

9.

he sued defendant not for her own actions, but for the alleged actions of those she supervised". Plaintiff never stated that. Infact, in pages 101-104 of defendants Exhibit #1, Dep of Woods, plaintiff explains in further details the reasons for suing Chicone, such as ensuring staffing levels, ensuring medical staff do their jobs properly, ensuring NSC passes are not cancelled and patients who need to be seen are seen,.All things that are her responsibility (See Ex.5).

III. Defendant claims that she was not on notice that plaintiffs medical care was somehow amiss. Plaintiff can prove this is incorrect. Defendant states "even if there is evidence that defendant knew about the details of plaintiffs medical care via phone calls or letters, that knowledge alone would not support an inference of deliberate indifference because personnel who did not treat the plaintiff are presumptively entitled to rely on the judgement of the medical professionals who did". Plaintiff argues that when Chicone recieved phone calls on July 21,2021 and on August 3,2021, plaintiff had still not been seen by a medical professional (See Ex.9). The fact that plaintiff had yet to be seen or treated was the reason for the calls and grievances that Chicone signed off on.(See Ex.1,2,9).

After plaintiff was seen by defendant Ek, plaintiff wrotew grievances about the care (and lack thereof) he was receiving, which Chicone signed off on (See Ex.2,3).

Defendant once again argues that at one point plaintiff had 24/7 access to the nursing staff. Yet evidence shows that plaintiff was still in constant pain (See Ex.11,12,13,14,15,18).

IV. Defendant claims that her only involvement to plaintiff was that she responded to plaintiff's four grievances. Plaintiff has evidence that her job consists of so much more than just responding to grievances (See Ex. 5). Chicone failed to properly staff the HCU, failed to ensure that plaintiff was seen by medical staff in a reasonable amount of time despite phone calls, letters, and grievances, and Chicone failed to ensure standards of care and that Wexfrord protocols were met. Chicone is personally responsible for plaintiffs rights being violated by knowing of the constitutional deprivations and turning a blind eye. "An official satisfies the personal responsibility requirement of section 1983... if the conduct causing the constitutional deprivation occurs at [her] direction or with [her] knowledge and consent". Smith V. Rowe, 761 F.2d 360, 369 (7th Cir.1985). That is, she "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye..." Jones, 856F.2d at 992. Evidence shows Chicone turned a blind eye in this case.

Plaintiff was hurt and scared. Plaintiff was begging for help for weeks, talking to officers, wardens, nurses, dropping request slips and writting grievances and having people call defendant Chicone (See Ex.1,2,3,9,18 para 1,2,4,5,6). Walking caused plaintiff extreme pain but noone would help him. After waiting three weeks, plaintiff was finially seen by Dr. Ek who sent plaintiff back to the general prison population with no crutches, splint, ice or ordering a lay-in(See Ex. 18 para7,8,9). Plaintiff explained to Dr. Ek multiple times that it hurt him to walk, and even after three weeks since the injury, Ek documented plaintiffs pain 8/10, swelling and discoloration (See Ex.4). After nearly two months of being forced to walk on a torn achilles tendon, plaintiff was given

11.

a wheelchair. Plaintiff's Orthopedic surgeon informed plaintiff that he should have been brought in sooner and the delay likely made his condition worse (See Ex.18 para 12). Plaintiff's Orthopedic surgeon also informed plaintiff that the delay and stretching (From physical therapy prior to surgery) caused him to no longer be able to just re-attatch his tendon, but would need to perform a tendon transfer surgery.(See Ex. 18 para 13).

The declaration of the plaintiff and his response to defendants motion for summary judgement are squarely contradictory. Infact, defendant Chicone failed to send a declaration or affidavit along with her summary judgement motion. A reasonable jury could find for the plaintiff based on the facts in the plaintiffs declaration, and summary judgement must therefore be denied. Anderson V. Liberty Lobby Inc.,477 U.S. 242,248,106 S.Ct.2505(1986).

By disputing the material facts alleged in the defendants' motion, the district court should not grant summary judgement. Wilson V. Williams,997 F.2d348,350-51(7th Cir.1993).

## CONCLUSION

Defendants' motion for summary judgement should be DENIED. Evidence shows defendant acted with deliberate indifference to plaintiffs serious medical needs by short staffing the healthcare unit, Failing to ensure patients were seen in a reasonable amount of time, failing to ensure plaintiff received care that was constitutionally adequate and up to wexfords standards, and turning a blind eye to plaintiffs serious medical needs despite phone calls, request slips and grievances.

WHEREFORE, plaintiff PRAYS this HONORABLE court DENY defendants' Motion for summary judgement and allow this case before a jury.

12

                    Respectfully submitted,

October,13.2024

                                    /s/ *[signature]*
                                      Lucas Wood R64297
                                      251 N.IL.HWY.37
                                      Ina,Il.62846